UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| EVELYN C. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 06-91-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WASTE MANAGEMENT OF | ) | **MEMORANDUM OPINION** |
| KENTUCKY HOLDINGS, INC., et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' motion to dismiss or, alternatively, for a more definite statement. [Record No. 2] For the reasons discussed below, the Court will grant the Defendants' motion to dismiss as it relates to the Plaintiff's claim for outrage/intentional infliction of emotional distress. The remaining portion of that motion will be denied. However, the Court will grant the Defendants' motion for a more definite statement as it relates the Plaintiff's claims for wrongful discharge and defamation. Because the Plaintiff has moved to amend her Complaint, and because the tendered Amended Complaint does not overcome the deficiencies outlined below, her motion will be granted and she will be given ten (10) days to file an Amended Complaint which complies with this opinion.

**I.     BACKGROUND**

On January 19, 2005, Plaintiff Evelyn Bennett ("Bennett") filed suit against Defendants Waste Management of Kentucky Holdings, Inc. and Waste Management of Kentucky LLC, d/b/a Waste Management, Inc. (collectively, "Waste Management") in the Harlan Circuit Court. Her

Complaint contained claims of wrongful discharge, defamation, outrage/intentional infliction of emotional distress, and breach of implied contract. Waste Management removed the action to this Court on February 27, 2006.

Bennett's alleges she was hired as a secretary at Waste Management on March 31, 2003. [*See* Complaint, ¶ 4] She states that she was suspended from that job on June 13, 2003, pending an investigation regarding allegations of theft. [Complaint, ¶ 5] Bennett further alleges that she was "told by Danny Gibson on behalf of Waste Management that if she was cleared that she could have her job back and Waste Management would back up and pay her from the date she was suspended to the present." [Complaint, ¶ 6] Bennett alleges she was "cleared of the allegations" in April 2005 (approximately two years later) when a Harlan County Grand Jury returned a "No True Bill" concerning the allegation of embezzlement against Waste Management. [Complaint, ¶ 7]

Bennett contends that she did not receive notice of termination until April 2005 when her counsel contacted Waste Management requesting back pay. [Complaint, ¶ 9] She alleges that she was "fired because she exercised her right under the United States Constitution and the Constitution of the Commonwealth of Kentucky to maintain her innocence when the Defendants made allegations of theft against her." [Complaint, ¶ 11] Additionally, Bennett alleges that Waste Management's "acts" caused her "severe emotional distress" and resulted "defamation of [her] character." [Complaint, ¶ 12] As a result, she seeks compensatory and punitive damages, attorney's fees, and costs.

**II.     LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the Plaintiff's complaint. Pursuant to liberal pleading rules, a complaint is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The purpose of the complaint is to provide the defendant with notice of the claims asserted and the grounds supporting the claims. *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). When assessing the sufficiency of a complaint, the court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well- pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)); *Courtney v. Smith,* 297 F.3d 455, 459 (6th Cir. 2002). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz,* 534 U.S. at 514 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). In light of the foregoing, if a complaint is so deficient that it does not provide notice to the defendant, a defendant may move for a more definite statement. *Swierkiewicz*, 534 U.S. at 514; *Baxter v. Rose,* 305 F.3d 486, 490 (6th Cir. 2002) ("In the case of a truly unclear complaint, the defendant can move for a more definite statement of the claim under Rule 12(e)."). Pursuant to Rule 12(e), the court may grant this motion "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The defendant's motion for a more definite statement "shall point out the defects complained of and the details desired." *Id.*

### III. ANALYSIS

#### A. Wrongful Discharge

Waste Management argues that Bennett's wrongful discharge claim should be dismissed because the complaint fails to state a cause of action for such an action. In paragraph 11, Bennett alleges that her employment was terminated because "she exercised her right under the United States Constitution and the Constitution of the Commonwealth of Kentucky to maintain her innocence when the Defendants made allegations of theft against her." [Complaint, ¶ 11] According to Waste Management, Kentucky law does not recognize a wrongful discharge claim against a private employer based on an alleged constitutional violation.

Under Kentucky law, employment is generally "at-will" meaning that an employer may ordinarily discharge an employee "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). The Supreme Court of Kentucky, in limiting judicially-created exceptions to the employment at-will doctrine, has stated that a wrongful discharge must be "contrary to a fundamental and well-defined public policy . . . [as] evidenced by a constitutional or statutory provision." *Id*. In later clarifying that statement, the court has held that there are two situations where a discharge can violate fundamental public policy, absent explicit or implicit legislative statements prohibiting the discharge: (1) where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment; and (2) when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment. *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985) (quotations omitted).

Kentucky courts applying *Grzyb* have limited their analysis to whether the discharge was for one of these two enumerated reasons. *See e.g., Nork v. Fetter Printing, Co.*, 738 S.W.2d 824, 827 (Ky. Ct. App. 1987); *Moss v. Roberson,* 712 S.W.2d 351, 353 (Ky. App. 1986). Federal courts applying Kentucky law have applied the same analysis.

In *Gryzb*, Kentucky's Supreme Court rejected a claim of wrongful discharge based on the First Amendment to the United States Constitution and its counterpart, Section 1 of the Kentucky Constitution. The court noted that the constitutional protection of freedom of association only proscribes governmental transgressions. It does not limit an employer's right to discharge an employee. Similarly, in *Boykins v. Housing Authority of Louisville*, 842 S.W.2d 527, 529 (Ky. 1992), the court specifically rejected a wrongful discharge claim based upon Section 14 of the Kentucky Constitution, holding that "there [was] no employment-related nexus between the constitutional policy stated in Section 14 and [the Plaintiff's] discharge."

Although Bennett has alleged that she was wrongfully terminated because she exercised her constitutional right to maintain her innocence, she has failed to articulate the *specific* constitutional provision which gives her a cause of action for being terminated for "maintaining her innocence." The Court is unaware of any clear legislative or constitutional expression of a fundamental policy to preclude the firing of a person who has maintained "one's innocence" when accused by the employer of theft.[1] Because Bennett's complaint is vague with respect to

---

[1] To the extent the Plaintiff is attempting to allege that the Fifth Amendment creates a public policy which prohibits discharge for maintaining one's innocence, the Court notes that the Fifth Amendment is a mandate to the government, not an employer, to provide individuals with the protections listed therein. *See Gryzb*, 700 S.W.2d at 402 (noting that the First Amendment only proscribes governmental transgressions). Moreover, the Fifth Amendment has nothing to do with employment rights. *See Boykins*, 842 S.W.2d at 530 (noting that there must be an employment-related nexus between the alleged constitutional policy and the discharge).

the *specific* constitutional provision giving rise to her wrongful discharge claim, the Court will require her to provide a more definite statement with respect to that claim.

### B. Defamation

Waste Management also contends that Bennett has failed to sufficiently plead a cause of action for defamation. The critical elements for a case of defamation are: (1) defamatory language, (2) about the plaintiff (3) which is published and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270 (Ky. App. 1982). "Defamatory language" is language which "tends to: (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times,* 623 S.W.2d 882, 884 (Ky. 1981).

As a general matter, the federal rules merely require that a plaintiff provide "a short and plain statement of the claim showing that [he or she] is entitled to relief." Fed.R.Civ.P. 8(a)(2). The limited exceptions to this rule are set forth in Rule 9, which relate to claims regarding "fraud or mistake" and demands for "special damages." Fed.R.Civ.P. 9(b) and (g). Thus, nothing in the federal rules requires a plaintiff to set forth detailed pleadings regarding the precise circumstances under which a defendant's allegedly defamatory statements were made.

Here, however, Bennett's Complaint merely alleges that Waste Management suspended [her] without pay pending a theft investigation, told her she could have her job back and would receive back pay if she was cleared of the theft allegations, and fired her without paying back pay after she was cleared of those allegations. Bennett alleges that these "acts" resulted in defamation of her character. Therefore, Bennett requests damages for defamation of her

character. Although the complaint is not required to provide more than allegations containing the basic elements of the claim, it must contain more than bare assertions of legal conclusions to satisfy federal notice pleading requirements. *See Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988).

Bennett has failed to allege facts to support the elements of a defamation claim. Specifically, the complaint fails to contain any allegations that Waste Management made a defamatory statement about her which was published or spoken to a third party. Therefore, Bennett's complaint fails to satisfy the minimum requirements of notice pleading. Despite these defects, however, the Court elects not to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure at this time. Instead, Bennett will be given the opportunity to amend her Complaint to comply with the notice pleading requirements. The Defendants' motion will be granted with respect to its motion for a more definite statement as to the defective components of the Complaint as it relates to the defamation claim. F.R.C.P. 12(e).

### C.    Outrage

In order to sustain a claim for outrage, Kentucky law requires "extreme and outrageous conduct" from one who "intentionally or recklessly causes severe emotional distress to another." *Craft v. Rice*, 671 S.W.2d 247, 250-51 (Ky. 1984) (quotation omitted). The elements of a claim for outrage are: (1) intentional or reckless conduct that is (2) outrageous and intolerable, and offends against the generally accepted standards of decency and morality and (3) causes (4) severe emotional distress. *Stringer v. Wal-Mart Stores, Inc.,* 151 S.W.3d 781, 788 (Ky. 2004) (citation omitted). The court determines whether the alleged conduct could "reasonably be

regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (quotation omitted). In applying this standard, Kentucky courts have "set a high threshold for IIED/outrage claims." *Id.* at 791 (finding no claim for outrage where employer intentionally "set up" plaintiffs in order to fire them, and implied to other employees that plaintiffs were "thieves").

Kentucky has adopted *Restatement (Second) of Torts § 46* in analyzing such claims. *See Craft*, 671 S.W.2d at 247; *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1 (Ky. 1990). Comment d to this Restatement section states that, "[g]enerally the case is one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . ." *Restatement (Second) of Torts § 46.* The conduct in question must be "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft,* 671 S.W.2d at 250. In essence, the plaintiff must show that the conduct in question "has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana,* 796 S.W.2d at 3 (quoting *Restatement (Second) of Torts, § 46* Comment d).

In the present case, Bennett contends that she was fired by Waste Management for maintaining her innocence when the company accused her of theft. According to Bennett, approximately three months after she began working for the Defendant, she was suspended, without pay, pending an investigation of alleged embezzlement. Bennett contends that she was told that she could have her job back and receive back pay if she was ultimately cleared of the

charges. Later, a Harlan County grand jury returned a "No True Bill" on the embezzlement charge. However, Bennett claims that, despite promises previously made to her, she was wrongfully terminated. Thus the Court must determine whether this alleged conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana*, 796 S.W.2d at 3.

In *Kroger Company v. Willgruber*, 920 S.W.2d 61 (Ky. 1996), the plaintiff, a long-time Kroger employee, was found to have been wrongfully terminated. After the termination, the company, through one of its senior personnel officers, pressured the plaintiff sign papers releasing Kroger from liability, misrepresented the plaintiff's eligibility for another position, and attempted to persuade the Plaintiff's disability insurance carrier to deny benefits to him. The Kentucky Supreme Court affirmed the jury's determination that Kroger's actions following the plaintiff's wrongful termination justified an award of compensatory and punitive damages for intentional infliction of emotional distress.

However, in *Sacharnoski v. Capital Consolidated, Inc.*, 187 F. Supp. 2d 843 (W.D. Ky. 2002), the plaintiff was forced by his employer to falsify employment records and was then terminated for doing so. The court found that such conduct on the part of the employer was insufficient to satisfy the requirement for "outrageous conduct." Citing *Humana of Kentucky v. Seitz*, the court characterized Kentucky as a jurisdiction that takes a more restrictive approach of the tort of outrage.

-9-

In *Humana*, the plaintiff was a patient in the defendant hospital. After she gave birth in her room to a stillborn child, she alleged that the nurses purposely ignored her calls for assistance. According to the plaintiff, when a nurse arrived, she was told to "shut up" because she was disturbing other patients. In addition, the plaintiff claimed that after it was determined that the baby was dead, the nurse responded to her inquiries concerning where the baby was going by stating that, "honey, we dispose of them right here in the hospital." Reversing the decision of the lower court, the Supreme Court of Kentucky concluded that the actions of the nursing staff did not constitute outrageous conduct.

In this case, Bennett was an at-will employee and was subject to termination at any time "for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone*, 666 S.W.2d at 731. Bennett contends that Waste Management is liable because it "wrongfully accused [her] of stealing money . . . [and] went one step further attempting to prosecute [her]." [Record No. 4, p. 2] However, even if the Defendant "wrongfully accused" her of stealing money, Waste Management was entitled to terminate her employment. As an at-will employee, Waste Management could have fired her simply because it suspected her of theft. Thus, even assuming the facts alleged by Bennett are true, Waste Management's actions in terminating her do not reach the high standard for a claim of outrage. *Stringer,* 151 S.W.3d at 791. Accordingly, Bennett has failed to state a viable claim of outrage under Kentucky law. Waste Management's motion to dismiss with respect to this claim will be granted.

      **D.**     **Breach of Implied Contract**

Waste Management also argues that Bennett's claim for breach of implied contract should be dismissed. According the Bennett, Waste Management is liable for breach of implied contract because Danny Gibson, acting on behalf of Waste Management, told her that "if she was cleared [of the theft allegations] that she could have her job back and Waste Management would back up and pay her from the date she was suspended to the present." [Complaint, ¶ 6]

Kentucky courts have not specifically addressed the requirements for creating an implied employment contract. However, as previously noted, the courts have held that employees are at-will unless the employer clearly agrees otherwise. *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 98 (Ky. App. 2000). Moreover, Kentucky courts have held that the at-will employment relationship may be modified, without additional consideration, if the employer clearly states an intention to do so. *See Shah v. American Synthetic Rubber Corp.,* 655 S.W.2d 489 (Ky. 1983). Kentucky also has recognized that employment-at-will relations may be modified by an oral contract. *Hammond v. Heritage Communications, Inc.,* 756 S.W.2d 152 (Ky. App. 1988). However, the oral modification must not be vague or ambiguous. *See Hines v. Elf Atochem North America, Inc.*, 813 F. Supp. 550 (W.D. Ky. 1993) (citing *Wehr Constructors, Inc. v. Steel Fabricators, Inc.*, 769 S.W.2d 51 (Ky. App. 1988)).

Construing the allegations most favorably to Bennett, the Court believes that there is a factual issue concerning whether an oral contract modifying Bennett's status as an at-will employee was entered into between the parties. Therefore, the Court will deny Waste Management's motion to dismiss Bennett's breach of an implied contract claim. Further, it is not necessary for Bennett to file a more definite statement regarding this claim because the

-11-

factual basis concerning the alleged oral modification of the terms of her employment may addressed through discovery.

### IV.    CONCLUSION

For the reasons set out above, it is hereby **ORDERED** as follows:

1.    The Defendants' motion to dismiss is **GRANTED** with respect to the Plaintiff's outrage/intentional infliction of emotional distress claim. This claim shall be **DISMISSED**, with prejudice. The remaining portion of the Defendants' motion to dismiss is **DENIED**.

2.    The Defendants' motion for a more definite statement is **GRANTED** with respect to the Plaintiff's wrongful discharge and defamation claims.

3.    The Plaintiff's motion for leave to file an Amended Complaint is **GRANTED**. The Plaintiff shall be given ten (10) days from entry of this Order to amend her Complaint with a more definite statement consistent with this Memorandum Opinion and Order.

This 18th day of April, 2006.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge